NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.gov*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

EDWARD V. HAILSTONE,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-14083
Trial Court No. 2KB-17-00071 CI

O P I N I O N

No. 2791 — October 4, 2024

Appeal from the Superior Court, Second Judicial District, Kotzebue, Romano D. DiBenedetto, Judge.

Appearances: Cynthia Strout, Attorney at Law, Anchorage, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, and Harbison and Terrell, Judges.

Judge HARBISON.

Edward V. Hailstone was convicted of two counts of perjury and two counts of providing false information with the intent of implicating another person in an offense.[1] Following the denial of his direct appeal, Hailstone filed an application for

---

[1]    AS 11.56.200 and AS 11.56.800(a)(1)(A), respectively.

post-conviction relief, raising various claims of ineffective assistance of counsel. The superior court denied this application, and Hailstone now appeals one of the claims: that his attorney provided ineffective assistance of counsel by permitting Hailstone to dictate the defense strategy, even though a more viable defense strategy was available. For the reasons explained in this opinion, we conclude that the attorney's performance did not fall below the required standard of competence, and we accordingly affirm the superior court's order denying post-conviction relief.

### Factual and procedural background

We begin by summarizing the events that led to Hailstone's indictment, as described in our opinion from Hailstone's direct appeal.[2]

Hailstone was charged with two counts of perjury and two counts of providing false information with the intent of implicating another person in an offense. These charges arose after Alaska State Troopers responded to a report of a fight in Noorvik. A number of people, including Hailstone's stepson and Hailstone's daughter, were involved in the fight. The troopers spoke with people who were present at the fight and ultimately arrested several, including Hailstone's stepson.

Later that morning, Hailstone, his wife, and his daughter went to the public safety building where the troopers were processing the people they had arrested. When the Hailstones arrived at the public safety building, they told the troopers, in raised voices, that the fight in question started when Hailstone's daughter and Hailstone's stepson were confronted by people carrying weapons.

Troopers Christopher Bitz and Gordon Young went outside with the Hailstones to discuss their concerns. Bitz told the Hailstones that other witnesses indicated that Hailstone's daughter and stepson had started the fight. In response, the Hailstones began yelling at Bitz and insisting that someone had pointed a rifle at

---

[2] *See Hailstone v. State*, 2016 WL 853039 (Alaska App. Mar. 2, 2016) (unpublished).

Hailstone's daughter. During this interaction, Hailstone's daughter moved her hand in a manner that made both Bitz and Young believe that she was going to strike Bitz. In response, Bitz moved to prevent this by grabbing the daughter's arm to prevent her from striking him.

The next day, Hailstone sent an email to the Alaska State Troopers in which he claimed that Bitz had physically assaulted his daughter at the public safety building, causing her "serious pain." According to Hailstone's email, Young had interceded to stop Bitz from inflicting further pain on his daughter. Hailstone also asserted that Bitz had caused him and his wife to fear for their lives by placing his hand on his gun "like he was going to draw it." Hailstone stated that Young apologized to the Hailstones for Bitz's actions. This email was the basis for one count of providing false information with the intent to implicate another person in an offense.

Two days later, Hailstone applied for short-term and long-term protective orders against Bitz. In support of his request for a short-term protective order, Hailstone testified under oath before a magistrate judge. In this testimony, Hailstone stated that, during the encounter at the public safety building, Bitz had attacked his daughter and did not stop until Young physically intervened. Hailstone also testified that Bitz had threatened Hailstone and his wife with a gun. Hailstone claimed that Young had apologized to him for Bitz's actions, and that a restraining order was necessary to protect his family from Bitz. After hearing this testimony, the magistrate judge granted Hailstone's request for a short-term protective order. Hailstone's testimony before the magistrate formed the basis for one count of perjury.

As a result of Hailstone's allegations, the Alaska Bureau of Investigation opened an investigation into what had occurred. Hailstone told the trooper conducting the investigation that Bitz had grabbed his daughter's arm and put her into a wrist lock. Hailstone claimed that Bitz was "going for his gun," when Young intervened by physically removing Bitz's hands from his daughter and moving Bitz away from her. The investigator ultimately determined that no charges against Bitz were warranted.

Hailstone's statements to the investigator formed the basis of the second count of providing false information with the intent to implicate another person in an offense.

Two weeks later, Hailstone testified under oath before a superior court judge in support of his petition for a long-term protective order against Bitz. In this testimony, Hailstone repeated most of the allegations he had previously made regarding Bitz's behavior. Following this hearing, the superior court judge denied the request for a long-term order. Hailstone's testimony at this hearing was the basis for the second count of perjury.

Hailstone was charged with the perjury and false information counts, and his case proceeded to a jury trial. While Hailstone did not personally testify at trial, the defense attorney called several eyewitnesses who observed the interaction between Trooper Bitz, Trooper Young, and the Hailstones. Hailstone's wife and daughter testified that Bitz had exhibited unwarranted aggression towards Hailstone's daughter. During closing arguments, the defense attorney told the jury that it should acquit Hailstone for two reasons: (1) "all the witnesses except the troopers saw things exactly the way that [Hailstone] did," and (2) the State "didn't present any evidence that [Hailstone] didn't absolutely believe what he said."

The jury convicted Hailstone of all charged counts — *i.e.*, two counts of perjury and two counts of providing false information.

Hailstone then filed a direct appeal. When Hailstone's trial attorney transferred the case to an appellate attorney, he prepared a transfer memo stating that Hailstone was "one of [his] most difficult clients of all time" and that Hailstone "very strongly directed litigation strategy." This Court affirmed Hailstone's convictions on direct appeal.[3]

Hailstone subsequently filed an application for post-conviction relief, alleging ineffective assistance of his trial attorney. Among the claims raised was that

---

[3]    *Id.* at *10.

Hailstone's trial attorney erred by implementing the trial strategy that Hailstone advocated for, rather than the strategy that the attorney believed would most likely succeed. The superior court dismissed some of Hailstone's claims for failure to state a *prima facie* case for relief, but conducted an evidentiary hearing on the remaining claims, including the claims related to the attorney's decision to adopt Hailstone's desired trial strategy.

During the evidentiary hearing, Hailstone's trial attorney testified that while he and Hailstone had substantial communication about the case, Hailstone was difficult to communicate with because he dominated the conversation and did not listen to him. According to the trial attorney, Hailstone maintained that his previous descriptions of the events were accurate, and that he was not guilty of perjury or providing false information because he was telling the truth. Hailstone made it clear that he wanted his attorney to pursue this defense at trial.

Hailstone's attorney testified that a better defense, in his view, was to argue that Hailstone did not have the *mens rea* necessary to support a conviction for perjury or providing false information because Hailstone believed that his version of the events was accurate. The attorney wanted to argue that different people can have different understandings of the same event, and that in Hailstone's case, both the troopers and the Hailstones were "being honest from their perspective . . . and that it [was] not necessary for one side or the other to be lying."

Hailstone's attorney testified that he repeatedly explained his proposed strategy (and why he believed it was the better strategy) to Hailstone. The defense attorney also testified that there was a way to combine the two defenses, but that he ultimately adopted Hailstone's defense.

Hailstone, by contrast, testified that his attorney did not explain the elements of the charges against him and did not explain why the attorney's strategy would have been better.

After the evidentiary hearing concluded, the superior court denied Hailstone's application for post-conviction relief. Relevant to this appeal, the court found that the defense attorney had informed Hailstone of "several legal defenses" and "urged the better of the legal arguments." The court further found that, "congruent with the Rules of Professional Conduct," the attorney ultimately defended the case using the argument preferred by Hailstone. These factual findings are not challenged on appeal. Based on these findings, the superior court held that there was "no reasonable doubt" that the attorney provided effective assistance of counsel.

This appeal followed.

### *Why we conclude that Hailstone failed to show that his defense attorney provided ineffective assistance of counsel*

Under the test established in *Risher v. State*, in order to show ineffective assistance of counsel, a defendant must prove that their attorney failed to "perform at least as well as a lawyer with ordinary training and skill in the criminal law," and that there is a reasonable possibility that the attorney's incompetence affected the outcome.[4] On appeal, Hailstone asserts that his defense attorney incompetently acquiesced in adopting Hailstone's preferred trial strategy. Hailstone argues that this acquiescence amounts to a structural error, requiring automatic reversal of his conviction. Alternatively, Hailstone argues that his attorney's incompetent performance met the prejudice prong under *Risher*.

Alaska Rule of Professional Conduct 1.2(a) states that "[i]n a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, whether the client will testify, and

---

[4] *Risher v. State*, 523 P.2d 421, 424-25 (Alaska 1974); *Burton v. State*, 180 P.3d 964, 968 (Alaska App. 2008).

whether to take an appeal."[5] But the Commentary to this rule clarifies that the client has "the ultimate authority to determine the purposes to be served by legal representation,"[6] and that because of the "varied nature" of potential disagreements between lawyers and clients, the Rules of Professional Conduct do not prescribe how disagreements are to be resolved when a conflict over tactics arises.[7]

In *Simeon v. State*, we explained that the client's decision-making authority is limited to the four decisions enumerated in Rule 1.2(a), and that all decisions concerning trial strategy are left to the attorney.[8] For this reason, we have held that an attorney did not act improperly when they chose to proceed with a defense strategy that was different from what the client requested.[9]

But in this case, unlike in *Simeon*, Hailstone's trial attorney did not pursue his own preferred strategy over his client's objections. Rather, according to Hailstone, his attorney did the exact opposite: he adopted the strategy that Hailstone — the *client* — requested, even though the attorney's preferred defense was available and was more likely to be successful. Hailstone contends that this decision was incompetent.

To establish that an attorney's tactical decision was incompetent, the defendant must establish that the attorney's actions were ones that no reasonably competent attorney would take.[10] Furthermore, as the United States Supreme Court has

---

5    Alaska R. Prof. Conduct 1.2(a).

6    Alaska R. Prof. Conduct 1.2 cmt. para. 1.

7    Alaska R. Prof. Conduct 1.2 cmt. para. 2.

8    *Simeon v. State*, 90 P.3d 181, 184 (Alaska App. 2004). The four decisions entrusted to the client are: (1) what plea to enter, (2) whether to waive jury trial, (3) whether to testify, and (4) whether to take an appeal. *Id.*; Alaska R. Prof. Conduct 1.2(a).

9    *Simeon*, 90 P.3d at 184-85.

10    *State v. Jones*, 759 P.2d 558, 568-70 (Alaska App. 1988).

explained, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."[11] Thus, an attorney's actions may properly be based on "informed strategic choices made by the defendant and on information supplied by the defendant."[12] And the Alaska Rules of Professional Conduct similarly require an attorney to abide by their client's decisions concerning the objectives of the representation and to "consult with the client as to the means by which they are to be pursued."[13]

In keeping with these principles, a majority of jurisdictions have held that when an attorney presents the defense favored by their client, rather than the defense that the attorney personally favors, this does not necessarily mean that the defense attorney acted incompetently.[14]

We have previously agreed with this majority position, noting that although counsel must give competent advice and is ultimately responsible for tactical and strategic decisions under their control, an attorney does not provide ineffective assistance of counsel when, after advising the client of what the attorney believes is the best legal tactic, the attorney acquiesces in the client's desire to proceed in a different

---

[11] *Strickland v. Washington*, 466 U.S. 668, 691 (1984).

[12] *Id.* Indeed, the Eleventh Circuit has held that "when a defendant preempts his attorney's strategy by insisting that a different defense be followed, no claim of ineffectiveness can be made." *Mitchell v. Kemp*, 762 F.2d 886, 889 (11th Cir. 1985).

[13] Alaska R. Prof. Conduct 1.2(a).

[14] *See Jeffries v. Blodgett*, 5 F.3d 1180, 1197-98 (9th Cir. 1993); *Zagorski v. State*, 983 S.W.2d 654, 658-59 (Tenn. 1998); *Commonwealth v. Sam*, 635 A.2d 603, 611-12 (Pa. 1993); *In re Trombly*, 627 A.2d 855, 856-57 (Vt. 1993); *State v. Ali*, 407 S.E.2d 183, 189 (N.C. 1991); *State v. Thomas*, 625 S.W.2d 115, 123-24 (Mo. 1981); *People v. Gadson*, 24 Cal. Rptr. 2d 219, 226-27 (Cal. App. 1993); *State v. Rubenstein*, 531 N.E.2d 732, 740 (Ohio App. 1987). *But see State v. Lee*, 689 P.2d 153, 159-60 (Ariz. 1984) (holding that a defense attorney falls below minimal standards of providing effective assistance when they acquiesce in a defendant's demand to call witnesses whose veracity and credibility the attorney strongly doubts).

manner.[15] As the Missouri Supreme Court has explained, "It would be absurd to say that a defendant may waive the assistance of counsel entirely [but] may not waive the benefit of counsel's advice with respect to a particular decision, such as whether or not to assert a particular defense."[16] Thus, even if the defendant's choice to pursue a particular defense was unwise, "this does not impeach the competency of counsel who advised against it. The failure of a strategy knowingly and voluntarily pursued by [a] defendant does not entitle him to another try under the guise of ineffective assistance of counsel."[17]

In Hailstone's case, the superior court found that Hailstone's attorney informed him "of the several legal defenses that could be made in his case" and the attorney "urged the better of the legal arguments, but ultimately accepted the wishes of his client and defended his client using the argument preferred by his client."[18] Given that Hailstone's attorney explained the various legal arguments available and why the attorney's own defense was the better choice, we conclude that the attorney could reasonably choose to adopt Hailstone's chosen defense and that such a choice was not incompetent.

There is a second reason why the defense attorney's performance was not incompetent. Here, although the defense attorney presented Hailstone's preferred

---

[15] *Valcarcel v. State*, 2003 WL 22351613, at *3 (Alaska App. Oct. 15, 2003) (unpublished).

[16] *Thomas*, 625 S.W.2d at 124.

[17] *Id.*

[18] A trial court's factual findings about whether an attorney's performance fell below the minimal level of competence are reviewed for clear error. *See Rausch v. Devine*, 80 P.3d 733, 737 (Alaska 2003) ("The factual findings of the trial court are reviewed for clear error, a standard that is met if, after a thorough review of the record, we come to a definite and firm conviction that a mistake has been made."). We have reviewed the record and find no clear error.

defense theory to the jury, the attorney also presented a second defense theory — the defense theory that Hailstone's attorney favored.

To convict Hailstone of perjury, the State had to prove, *inter alia*, that Hailstone's sworn statements were false *and* that Hailstone did not believe his sworn statements to be true.[19] Similarly, to convict Hailstone of providing false information, the State had to prove, *inter alia*, that Hailstone provided false information to a peace officer and that he knew that the information was false at the time it was given.[20]

In closing arguments, the defense attorney argued that Hailstone should be acquitted for two separate reasons: first, because Hailstone did *not* provide false sworn statements or false information to a peace officer (because Trooper Bitz was, in fact, assaultive toward Hailstone's daughter outside the public safety building), and second, because regardless of whether Hailstone's assertions were actually true or false, the State failed to prove at trial that Hailstone *knew* his sworn statements and information furnished to the police were false at the time he uttered or provided them (because Hailstone actually believed that his statements were true).

These two defense theories were not inconsistent. Rather, they could logically be presented together because they attacked different elements of perjury and providing false information to a peace officer. Therefore, the attorney's decision to simultaneously present Hailstone's preferred defense and his own preferred defense was not incompetent. For these reasons, we conclude that the trial court did not err in determining that the defense attorney's performance met at least the minimum standard of competence.

---

[19] *See* AS 11.56.200(a).

[20] *See* AS 11.56.800(a)(1)(A).

*Conclusion*

The judgment of the superior court is AFFIRMED.