IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 4, 2025

## VICTOR VALLE v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 17-03946        Carlyn L. Addison, Judge

_____

### No. W2024-00039-CCA-R3-PC

_____

A Shelby County jury convicted the Petitioner, Victor Valle, of rape of a child, and the trial court sentenced him to a term of twenty-two years imprisonment. Thereafter, he filed a petition for post-conviction relief, asserting that he was denied the effective assistance of counsel. In relevant part, the Petitioner alleged that his attorneys were ineffective by (1) calling the victim's mother and his former spouse as witnesses at trial; (2) failing to explain his right to testify and advising him not to testify; and (3) failing to advise him of his right to have the jury instructed regarding lesser-included offenses. The Petitioner also asserted that he was entitled to relief due to cumulative error. After a hearing, the post-conviction court denied relief, and the Petitioner appealed. Upon our review, we respectfully affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which J. ROSS DYER and JILL BARTEE AYERS, JJ., joined.

W. Price Rudolph, Memphis, Tennessee, for the appellant, Victor Valle.

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Steven J. Mulroy, District Attorney General; and Lessie Rainey, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

### A.    PETITIONER'S CONVICTION FOR RAPE OF A CHILD

A Shelby County jury found the Petitioner guilty of rape of a child.  *See State v. Valle*, No. W2019-01767-CCA-R3-CD, 2021 WL 1310875, at \*1-4 (Tenn. Crim. App. Apr. 8, 2021), *perm. app. denied* (Tenn. Aug. 5, 2021).  Although the indictment alleged that the act occurred between August 24, 2002, and October 12, 2005, the State elected to rely on the victim's testimony that the Petitioner forced her into a bathroom and performed oral sex on her in the spring of 2004.  Following the conviction, the trial court sentenced the Petitioner to a term of twenty-two years.  *Id.*

On direct appeal, the Petitioner alleged that the evidence was not legally sufficient to support the conviction.  He also contested the admission of certain evidence under Tennessee Rule of Evidence 404(b).  *See id.* at \*6-10.  This court affirmed the Petitioner's conviction on April 8, 2021, and the supreme court denied further review on August 5, 2021.

### B.    POST-CONVICTION PROCEEDINGS

On May 16, 2022, the Petitioner filed a timely pro se petition for post-conviction relief, alleging that he was denied the effective assistance of counsel.  After counsel was appointed, he filed an amended petition. As is relevant to this appeal, the Petitioner alleged that his trial attorneys were ineffective in three ways:  (1) by calling the victim's mother and his former spouse as witnesses; (2) by advising him against testifying without adequately explaining the advantages and disadvantages of doing so; and (3) by failing to inform him of his right to have the jury instructed regarding lesser-included offenses. Finally, the Petitioner claimed he was entitled to relief due to cumulative error.

The post-conviction court held a hearing on December 18, 2023.  During this hearing, the Petitioner testified and called each of his trial attorneys as witnesses, and the State offered no additional proof.  In relevant part, the substance of this testimony on each ground was as follows.

2

### 1.  Background of the Representation

Lead trial counsel testified that he had been practicing law for some fifty-six years and had handled over a thousand jury trials.  He said he was retained by the Petitioner's former spouse while the Petitioner was incarcerated.  Because of possible health issues involving lead counsel, co-counsel was appointed to ensure that the trial could proceed if the condition worsened.  Co-counsel testified that he had been a licensed attorney for more than forty-two years and had tried about 200 criminal jury trials in his career.

The Petitioner was released on bond after a couple of months in custody.  Lead counsel discussed the case with him and provided him with a copy of the discovery.  The attorneys did not engage in plea negotiations because the Petitioner maintained his innocence and did not want to plead guilty.

The Petitioner disputed much of the attorneys' testimony.  He maintained that he had only two meetings with lead counsel and one meeting with co-counsel before the trial.  He maintained that he was never provided with a copy of the discovery or informed of the State's evidence against him.

### 2.  Witness Testimony

The Petitioner discussed with lead counsel the possibility of calling the victim's mother and his former spouse as witnesses at the trial.  Before the trial, the attorneys interviewed both witnesses.  The lawyers anticipated that the victim's mother would testify about the house layout to rebut the victim's testimony.  They believed that the Petitioner's former spouse would be a character witness who could testify that the Petitioner was a good father and that the victim was often around the Petitioner without any issues.

During the pretrial interviews, neither witness indicated that they knew about any impropriety committed by the Petitioner.  However, the victim's mother testified at trial that the victim told her that the Petitioner had molested her.  She also acknowledged that the Petitioner had shown her naked pictures of the victim on his phone.  During the testimony of the Petitioner's former spouse, the State elicited proof that her oldest daughter reported that the Petitioner had touched her inappropriately.  She stated that the rape crisis center investigated the report but that the investigation was resolved in the Petitioner's favor.  Co-counsel said that the testimony from the Petitioner's former spouse was "some of the best testimony you would expect, ever anticipate that an ex-spouse would give about the behavior of a former spouse."

The Petitioner confirmed he was aware that the victim's mother knew about the nude pictures on his phone. He also knew that one of his daughters with his former spouse had alleged that he had behaved inappropriately with her and that the charges had been investigated by a rape crisis center in 2016.

### 3. Advice to Testify

The attorneys testified that they extensively advised the Petitioner about his right to testify and believed that he wished to do so. Lead counsel testified that he wanted the Petitioner to testify and informed him that certain evidence would only be admissible if he did so. Co-counsel testified that he told the Petitioner that his testimony was needed to counter the victim's testimony and that they were prepared to have him testify. They also informed the Petitioner about the instructions the court would give the jury if he elected not to testify.

However, during a trial recess, the Petitioner met with his lawyers and his brother-in-law to discuss whether he should testify. After speaking with his brother-in-law privately, the Petitioner told his lawyers that he decided not to testify. The Petitioner affirmed his decision shortly thereafter during a *Momon* hearing before the trial judge.[1]

In his testimony, the Petitioner disputed his attorneys' account, asserting that he wished to testify at trial instead. He testified that his attorneys advised him against testifying and explained that the State had the burden of proving his guilt beyond a reasonable doubt. The Petitioner denied discussing the issue with his brother-in-law and stated that he informed the court he did not wish to testify because he was following his lawyers' advice.

### 4. Lesser-Included Offenses

The Petitioner's attorneys testified that they advised him about potential lesser-included offenses related to the charged offense of rape of a child. They informed him that

---

[1] In *Momon v. State*, 18 S.W.3d 152, 162 (Tenn. 1999), our supreme court "adopted a prophylactic procedure designed to ensure that a defendant's waiver of the fundamental right to testify is voluntary, knowing, and intelligent." *Mobley v. State*, 397 S.W.3d 70, 90 (Tenn. 2013). In this procedure, trial counsel may make inquiry of the defendant in open court outside the presence of the jury, or the defendant may execute a written waiver of the right to testify. *Momon*, 18 S.W.3d at 162, 175. In this case, the trial court and trial counsel conducted the *Momon* hearing with the Petitioner in open court after the conclusion of the State's proof.

the statute of limitations had expired on all lesser-included offenses due to the delay in reporting. As such, they advised the Petitioner that he would have to waive the statute of limitations defense before the jury could be instructed on those charges.

The Petitioner's trial attorneys advised him against proceeding to trial with the only options for the jury being acquittal or conviction of child rape. However, although the attorneys "begged" the Petitioner to allow lesser-included offenses to be charged to the jury, the Petitioner declined to do so after speaking with his brother-in-law.

In his testimony, the Petitioner disputed that his attorneys informed him about lesser-included offenses or explained their significance. The Petitioner maintained that if he had been told that lesser-included offenses were alternative charges for the jury's consideration, he would have waived the statute of limitations. Nevertheless, the Petitioner acknowledged that after he declined to execute a waiver of the statute of limitations during the trial, he informed the trial court he wanted it "all or nothing."

## C.     DENIAL OF POST-CONVICTION RELIEF

Following the hearing, the post-conviction court made an oral announcement denying relief. With respect to the attorneys' decision to call the Petitioner's former spouse and the victim's mother as witnesses, the court found that the lawyers made a strategic decision after interviewing the witnesses and finding them to be credible. It also concluded that "everyone knew and specifically [the Petitioner] knew" that these witnesses could offer unfavorable testimony as well. The court declined to review counsels' performance through the lens of hindsight and found that they did not render deficient performance in calling these witnesses.

As to the Petitioner's decision not to testify, the post-conviction court found that the trial attorneys did not render deficient performance in advising the Petitioner on his right to testify. The court also found that the Petitioner likely wanted to testify at his trial, but chose instead to follow the advice of a third party. The post-conviction court further emphasized that the Petitioner had the benefit of a *Momon* hearing and could have changed his mind at any time.

Finally, regarding the Petitioner's refusal to waive the statute of limitations and allow the jury to be charged with lesser-included offenses, the post-conviction court acknowledged that a layperson could be confused over the benefits of such a strategy. However, the court also essentially credited the attorneys' testimony that the Petitioner

5

relied on the advice of a third party, finding that the lawyers' advice did not fall below "the ordinary course of defending someone with significant charges."

The court entered a written order confirming these findings on February 27, 2024, and the Petitioner filed a timely notice of appeal.

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). In this case, the principal issue is whether the post-conviction court properly denied relief because the Petitioner failed to show that he received the ineffective assistance of counsel. As our supreme court has made clear,

> [a]ppellate review of an ineffective assistance of counsel claim is a mixed question of law and fact that this [c]ourt reviews de novo. Witness credibility, the weight and value of witness testimony, and the resolution of other factual issues brought about by the evidence are entitled to a presumption of correctness, which is overcome only when the preponderance of the evidence is otherwise. On the other hand, we accord no presumption of correctness to the post-conviction court's conclusions of law, which are subject to purely de novo review.

*Phillips v. State*, 647 S.W.3d 389, 400 (Tenn. 2022) (citations omitted).

## ANALYSIS

In this appeal, the Petitioner argues that the post-conviction court erred when it denied relief. More specifically, he asserts that his attorneys were ineffective in calling the victim's mother as a witness because her testimony confirmed parts of the victim's testimony and bolstered her credibility. He also maintains that his attorneys should not have called his former spouse as a witness because she testified that her daughter accused him of being sexually inappropriate. The Petitioner further claims that his attorneys did not explain the advantages and disadvantages of testifying and improperly advised him not to testify. He contends that his attorneys failed to inform him of his right to have the jury instructed regarding lesser-included offenses. Finally, he states that he is entitled to relief due to cumulative error.

6

In response, the State argues that the Petitioner failed to show that his attorneys' performances were deficient or that any claimed deficiencies resulted in prejudice to the Petitioner. We agree with the State.

The Tennessee Post-Conviction Procedure Act provides an avenue for relief "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2018). A post-conviction petitioner has the burden of proving his or her allegations of fact with clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2018). For evidence to be clear and convincing, "it must eliminate any 'serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Arroyo v. State*, 434 S.W.3d 555, 559 (Tenn. 2014) (quoting *State v. Sexton*, 368 S.W.3d 371, 404 (Tenn. 2012)).

As noted above, the Petitioner alleges in this appeal that he was denied the effective assistance of counsel during his trial. Article I, section 9 of the Tennessee Constitution establishes that every criminal defendant has "the right to be heard by himself and his counsel." Similarly, the Sixth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." Indeed, "[t]hese constitutional provisions guarantee not simply the assistance of counsel, but rather the reasonably effective assistance of counsel." *Nesbit v. State*, 452 S.W.3d 779, 786 (Tenn. 2014). Accordingly, a petitioner's claim that he or she has been deprived "of effective assistance of counsel is a constitutional claim cognizable under the Post-Conviction Procedure Act." *Moore v. State*, 485 S.W.3d 411, 418 (Tenn. 2016); *see also Howard v. State*, 604 S.W.3d 53, 57 (Tenn. 2020).

"To prevail on a claim of ineffective assistance of counsel, a petitioner must establish both that counsel's performance was deficient and that counsel's deficiency prejudiced the defense." *Moore*, 485 S.W.3d at 418-19 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996)). A petitioner may establish that counsel's performance was deficient by showing that "counsel's representation fell below an objective standard of reasonableness." *Garcia v. State*, 425 S.W.3d 248, 256 (Tenn. 2013) (quoting *Strickland*, 466 U.S. at 688). As our supreme court has also recognized, this court must look to "all the circumstances" to determine whether counsel's performance was reasonable and then objectively measure this performance "against the professional norms prevailing at the time of the representation." *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015) (quoting *Strickland*, 466 U.S. at 688).

"If the advice given or services rendered by counsel are 'within the range of competence demanded of attorneys in criminal cases,' counsel's performance is not deficient." *Phillips*, 647 S.W.3d at 407 (quoting *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Notably, because this inquiry is highly dependent on the facts of the individual case, "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another." *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999).

In addition, a petitioner must establish that he or she has been prejudiced by counsel's deficient performance such that the performance "render[ed] the result of the trial unreliable or the proceeding fundamentally unfair." *Kendrick*, 454 S.W.3d at 458 (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993)). In other words, a petitioner "must establish 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Davidson v. State*, 453 S.W.3d 386, 393-94 (Tenn. 2014) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Howard*, 604 S.W.3d at 58 (quoting *Strickland*, 466 U.S. at 694).

## A.   CALLING VICTIM'S MOTHER AND PETITIONER'S FORMER SPOUSE AS WITNESSES

The Petitioner first argues that the victim's mother's testimony was "significantly damaging" to his character and his case because her testimony corroborated parts of the victim's testimony and bolstered her credibility. Similarly, the Petitioner asserts that the attorneys were ineffective by calling his former spouse as a defense witness, noting that on cross-examination, she acknowledged that one of her daughters with the Petitioner had made an allegation of sexual impropriety against him. The State responds that the attorneys made a reasonable strategic decision to call each witness and did not render deficient performance. We agree with the State.

Trial counsel "has a duty to investigate and prepare a case, and this duty derives from counsel's basic function to make the adversarial testing process work in the particular case." *Nesbit*, 452 S.W.3d at 796 (citation and internal quotation marks omitted). The duty of counsel is "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Kendrick*, 454 S.W.3d at 458 (quoting *Strickland*, 466 U.S. at 691). As part of the duty to investigate and prepare a case, trial counsel generally "has a duty to use witnesses who may be of assistance to the defense." *State v. Zimmerman*, 823 S.W.2d 220, 227 (Tenn. Crim. App. 1991). This duty includes calling witnesses who could help persuade the jury to acquit the defendant and those whose testimony may be relevant to establishing a lesser-included offense. *See id.* That said,

decisions about what witnesses to call and what specific evidence to present are generally matters of trial strategy. *See Felts v. State*, 354 S.W.3d 266, 285 (Tenn. 2011); *King v. State*, 989 S.W.2d 319, 333 (Tenn. 1999).

In this case, the post-conviction court found that the attorneys made a reasonable strategic decision to call these two witnesses in the defense of the Petitioner's case. The record supports this finding. After the Petitioner suggested that both witnesses testify in his defense, his attorneys interviewed them before trial. The lawyers believed that the victim's mother could testify about the layout of the house, which they believed would render the likelihood of the victim's version of events suspect. Further, they expected the victim's mother to testify that she did not believe the victim's allegations and that she "would have great influence at the trial." Similarly, the attorneys believed that the Petitioner's former spouse would testify that he was a good father and that the victim was frequently around him with no visible issues. Lead counsel believed that the Petitioner's former spouse, as a physician, would be well-received by the jury.

These witnesses testified as expected and offered favorable testimony for the Petitioner at his trial. Although other testimony was not as favorable, the attorneys' representation was not deficient here merely because the State elicited other testimony from these witnesses as well. *See House v. State*, 44 S.W.3d 508, 515 (Tenn. 2001) (recognizing that the fact that a particular strategy or tactic "failed or hurt the defense, does not, standing alone, establish unreasonable representation."). Moreover, with respect to the testimony of the Petitioner's former spouse that he was investigated on other allegations, she testified on redirect examination that the issue had been resolved in the Petitioner's favor. She also testified that she would not have continued to allow her children to spend time with him had the issue not been resolved in his favor.

The Petitioner has failed to overcome the strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Accordingly, because the decision to call these two witnesses was a strategic decision based on a reasonable investigation, we may not grant relief by second-guessing the actions of the Petitioner's trial lawyers. *See Dellinger v. State*, 279 S.W.3d 282, 295 (Tenn. 2009) ("[T]he petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings." (citation and internal quotation marks omitted)). The Petitioner is not entitled to relief on these grounds.

## B. PETITIONER'S RIGHT TO TESTIFY

The Petitioner next argues that his trial attorneys were ineffective in failing to explain the advantages and disadvantages of his testifying and in advising him not to testify at trial. More specifically, he asserts that he was willing to testify at trial, but followed the advice of his lawyers not to do so. In response, the State observes that the post-conviction court credited the testimony of the trial attorneys that they thoroughly discussed with the Petitioner his right to testify, but that he followed the advice of a third party not to do so. It further responds that the proof does not preponderate against these credibility findings. We agree with the State.

"[A] criminal defendant has a constitutional right to testify at trial." *Momon v. State*, 18 S.W.3d 152, 157 (Tenn. 1999). Trial counsel should give "careful and thorough advice" on the benefits and risks of testifying. *Wilcoxson v. State*, 22 S.W.3d 289, 318 (Tenn. Crim. App. 1999).

The post-conviction court found that after being advised by his attorneys to testify, the Petitioner relied on the advice of a third party, decided not to testify, "and as such is the architect of his own dilemma." The record supports these findings. The Petitioner's trial lawyers testified that the Petitioner was extensively advised about his right to testify and believed that he wanted to do so. Lead counsel expected the Petitioner to testify and informed him that certain evidence would be inadmissible if he did not do so. Co-counsel told the Petitioner that his testimony was needed to counter the victim's own testimony and that they were prepared to have him testify. They also informed the Petitioner about the instructions the court would give the jury if he elected not to testify.

"Appellate courts must generally defer to a post-conviction court's findings concerning witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." *Kendrick*, 454 S.W.3d at 457. As such, we "are bound by the post-conviction court's underlying findings of fact unless the evidence preponderates against them." *Whitehead v. State*, 402 S.W.3d 615, 621 (Tenn. 2013). Nothing in the record preponderates against the post-conviction court's findings; therefore, we defer to those findings. *See Duncan v. State*, No. W2019-00021-CCA-R3-PC, 2019 WL 4594277, at *6 (Tenn. Crim. App. Sept. 20, 2019) ("Counsel testified that he reviewed the Petitioner's right to testify 'extensively' with him and that the Petitioner decided not to testify. Other than his bare assertion that Counsel 'advised' him not to testify, there is nothing in the record to support the Petitioner's allegation that Counsel told him not to testify."), *perm. app. denied* (Tenn. Jan. 15, 2020). Accordingly, we affirm the

conclusion of the post-conviction court that the Petitioner's trial attorneys did not render deficient performance in this regard.

Moreover, the Petitioner did not identify at the post-conviction hearing what his testimony would have been had he taken the stand at trial. Although we have identified several factors that may indicate whether trial counsel's failure to call a defendant to testify constitutes ineffective assistance, we are "hampered" in applying these factors when the record does not show "what the petitioner's testimony would have been had he testified." *Wilcoxson*, 22 S.W.3d at 319; *see also State v. Zimmerman*, 823 S.W.2d 220 (Tenn. Crim. App. 1991). As such, even apart from the credited testimony of his trial lawyers, the Petitioner still has not shown a reasonable probability that the outcome of his trial would have been different had he been advised to testify. *Davidson*, 453 S.W.3d 393-94; *Moore v. State*, No. W2022-01785-CCA-R3-PC, 2024 WL 95127, at *5 (Tenn. Crim. App. Jan. 9, 2024) (finding a lack of prejudice where the petitioner did not identify the details of his expected trial testimony at the post-conviction hearing), *perm. app. denied* (Tenn. May 16, 2024). The Petitioner is not entitled to relief on these grounds.

## C.    LESSER-INCLUDED OFFENSES

The Petitioner next contends that his attorneys were ineffective because they failed to adequately explain his right to have the jury instructed on lesser-included offenses if he was willing to waive the statute of limitations. The Petitioner asserts that when his attorneys explained lesser-included offenses to him, he thought they were encouraging him to plead guilty. He claims that he would have waived the statute of limitations if he had understood that the waiver would enable the jury to consider lesser, alternative charges. The State responds that the post-conviction court implicitly accredited the attorneys' testimony that they thoroughly explained the concept of lesser-included offenses to the Petitioner and urged him to let the jury consider alternative charges to rape of a child. We agree with the State.

A criminal defendant has a constitutional right to have a jury instructed on lesser-included offenses if they are warranted by the proof. *Moore*, 485 S.W.3d at 419. Additionally, a trial court is statutorily required to give instructions on lesser-included offenses requested in writing. *See* Tenn. Code Ann. § 40-18-110(a). Moreover, a statute of limitations is not jurisdictional and may be waived by the accused so long as the waiver is knowingly and voluntarily entered. *State v. Pearson*, 858 S.W.2d 879, 887 (Tenn. 1993); *State v. Doane*, 393 S.W.3d 721, 732 (Tenn. Crim. App. 2011). We have recognized that deficient performance may exist where counsel "fail[s] to allow Petitioner to make an informed decision on whether to assert the statute of limitations as a defense or to waive

11

the statute of limitations and request jury instructions on the lesser-included offenses." *Miller v. State*, No. M2022-00901-CCA-R3-PC, 2023 WL 6787459, at *24 (Tenn. Crim. App. Oct. 13, 2023), *perm. app. denied* (Tenn. Mar. 7, 2024).

In this case, the post-conviction court did not make detailed findings on this ground alleged by the Petitioner. However, while the court acknowledged in its oral order how the Petitioner could be confused, it expressly denied granting relief on these grounds, thereby implicitly crediting the attorneys' testimony.

With that accredited testimony, we observe that Petitioner's trial attorneys testified that they advised him about potential lesser-included offenses related to the charged offense of rape of a child. The attorneys were concerned about proceeding to trial with the only options for the jury being acquittal or conviction of child rape. However, because the statute of limitations had expired on all lesser-included offenses due to the delay in reporting, the jury could not be instructed on these lesser offenses unless the Petitioner waived the statute of limitations as a defense. To that end, the Petitioner's trial attorneys testified that they "begged" the Petitioner to allow lesser-included offenses to be charged to the jury. However, the Petitioner instead chose to follow the advice of a third party, refused to waive the statute of limitations, and pursued an "all or nothing" strategy.

The Petitioner was free, of course, to reject the advice of his lawyers and pursue a strategy he believed would best accomplish his objectives. However, he may not later insist that the Sixth Amendment protects him from his own bad choices against the reasonable and informed advice of his lawyers to the contrary. It does not. *Cf. Mitchell v. Kemp*, 762 F.2d 886, 889 (11th Cir. 1985) ("When a defendant preempts his attorney's strategy by insisting that a different defense be followed, no claim of ineffectiveness can be made." (citations omitted)); *Hailstone v. State*, 557 P.3d 1211, 1215 (Alaska Ct. App. 2024) ("[E]ven if the defendant's choice to pursue a particular defense was unwise, this does not impeach the competency of counsel who advised against it. The failure of a strategy knowingly and voluntarily pursued by [a] defendant does not entitle him to another try under the guise of ineffective assistance of counsel." (citation and internal quotation marks omitted)). The Petitioner is not entitled to relief on this ground.

## D.   CUMULATIVE ERROR

The Petitioner contends that cumulative error occurred as a result of his attorneys calling the victim's mother and his former spouse as witnesses, not adequately explaining his right to testify, and failing to clarify the strategy of charging lesser-included offenses to

the jury. This court has recognized that "in the context of an ineffective assistance of counsel claim, cumulative error examines the prejudicial effect of multiple instances of deficient performance." *Olive v. State*, No. M2023-00719-CCA-R3-PC, 2024 WL 2797015, at *11 (Tenn. Crim. App. May 31, 2024) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. Oct. 24, 2024). To that end, and perhaps obviously, a petitioner "who has failed to show that he received constitutionally deficient representation on any single issue may not successfully claim that his constitutional right to counsel was violated by the cumulative effect of counsel's errors." *Conaser v. State*, No. M2023-00271-CCA-R3-PC, 2024 WL 244964, at *7 (Tenn. Crim. App. Jan. 23, 2024) (citation and internal quotation marks omitted), *no perm. app. filed.*

In this case, the record does not reflect any deficient performance by the Petitioner's trial attorneys. As such, no cumulative error claim is possible. *See Hartshaw v. State*, No. E2023-01565-CCA-R3-PC, 2024 WL 4815182, at *10 (Tenn. Crim. App. Nov. 18, 2024), *no perm. app. filed*; *Martin v. State*, No. E2022-00688-CCA-R3-PC, 2023 WL 3361543, at *5 (Tenn. Crim. App. May 11, 2023) ("[C]umulative error does not apply in post-conviction cases where the petitioner has failed to show any instance of deficient performance by counsel."), *perm. app. denied* (Tenn. Sept. 11, 2023). We conclude that the Petitioner is not entitled to relief on the basis of cumulative error.

## CONCLUSION

In summary, we hold that the post-conviction court properly found that the Petitioner was not denied the effective assistance of counsel during his trial. Accordingly, because the Petitioner's conviction or sentence is not void or voidable because of the violation of a constitutional right, we respectfully affirm the denial of post-conviction relief in all respects.

s/ *Tom Greenholtz*
TOM GREENHOLTZ, JUDGE